IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY SCOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:24-cv-3144-X (BT) |
| | § | |
| STATE OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Anthony Scott filed this *pro se* civil action against the State of Texas, Dallas County, Danielle Uher, Thomas A. D'Amore, and "unknown others." *See* Sec. Am. Compl. (ECF No. 12). The Court granted him leave to proceed *in forma pauperis* and withheld service of process pending judicial screening. Order (ECF No. 9). Now, for the reasons stated, the District Judge should dismiss without prejudice Scott's claims against the State of Texas and dismiss with prejudice his remaining claims.

**Background**

As best the Court understands his pleadings, Scott alleges that he is a disabled American Indian who was convicted by a state court that lacked jurisdiction and that Defendants subjected him to solitary confinement and prolonged his incarceration beyond his release date.[1] *See* First Am. Compl. at 1–2

---

[1] In 2009, Scott pleaded guilty to multiple drug-related charges in Dallas County and was sentenced to four years' incarceration to be served concurrently with a

(ECF No. 6); *see also* MJQ Resp. (ECF No. 11); Sec. Am. Compl. (ECF No. 12). He allegedly suffered "treatment or non treatment" that resulted in permanent mental harm—including post-traumatic stress disorder (PTSD), schizoaffective disorder, and bipolar disorder—as well as unspecified physical harm. First Am. Compl. at 2. Such harm purportedly prevented Scott from obtaining gainful employment in Texas, prompting him to move to Oklahoma. *See id.* at 1–2. Scott states that his mental and physical condition has worsened following this move. *Id.* at 1. Scott also claims that he suffered discrimination on account of his disabilities and that Defendants violated the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). *See* Sec. Am. Compl. at 2. Scott seeks $5 million in damages and "corrective medical treatment." First Am. Compl. at 1; Sec. Am. Compl. at 3.

## Legal Standards and Analysis

A district court may summarily dismiss a complaint filed IFP if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks *monetary* relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and

---

prior sentence in the custody of the Texas Department of Criminal Justice (TDCJ). *See State of Tex. v. Scott*, F-07-24183 (203rd Jud. Distr. Ct.); *State of Tex. v. Scott*, F-08-40082 (203rd Jud. Distr. Ct.); *State of Tex. v. Scott*, F-09-23749 (203rd Jud. Distr. Ct.).

must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Twombly*, 550 U.S. at 555.

The Court liberally construes Scott's pleadings as asserting claims under 42 U.S.C. § 1983, the ADA, the RFRA, and the RLUIPA. For the following reasons, the District Judge should dismiss each of these claims.

## I. Sovereign immunity bars Scott's claims against the State of Texas.

"Absent waiver, the immunity of a state from suit as signified by, but not fully expressed in, the Eleventh Amendment is a jurisdictional barrier." *Stramaski v. Lawley*, 44 F.4th 318, 321–22 (5th Cir. 2022) (citing *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 374, 376 (5th Cir. 2020)). " 'Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless the state has waived its sovereign immunity or Congress has clearly abrogated it.' Texas has not consented by statute, and [42 U.S.C.] § 1983," for example, "does not abrogate state sovereign immunity." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015) (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)) (further citation omitted).

Scott has identified no waiver or abrogation of sovereign immunity. His contention that the State of Texas has waived its immunity is threadbare and devoid of any support. *See* Sec. Am. Compl. at 2–3; *see also Jennings v. Abbott, 538 F. Supp. 3d 682, 691 (N.D. Tex. 2021)* ("The State of Texas has not waived its sovereign immunity from section 1983 claims."). Therefore, the District Judge should dismiss Scott's claims against the State for lack of jurisdiction.

## II.   Scott fails to state a claim for municipal liability against Dallas County.

To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.' " *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.' " *Id.* at 541–42 (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (further citation omitted).

The Magistrate Judge's Questionnaire (MJQ) asked Scott to identify the official policy or custom of Dallas County pursuant to which his rights were allegedly violated. MJQ at 5. Scott responded that "Dallas County records SHOWS [*sic.*] a policy or custom of actual or constructive knowledge and a number of constitutional violations whose 'moving' force is one or more of those policy/custom [*sic.*], going back to 1864." Resp. at 1. Scott did not submit or

otherwise identify any such records. His conclusory allegation is insufficient to state a claim for municipal liability. *See Nieman v. City of Dallas*, 2015 WL 5076784, at *7 (N.D. Tex. July 21, 2015), *rec. adopted*, 2015 WL 5089580 (N.D. Tex. Aug. 27, 2015) (dismissing § 1983 claims against municipality where plaintiff provided only conclusory allegations that the municipality was on notice of a policy or custom causing the deprivation of constitutional rights).

Scott fails to plead the existence of a policy, custom, or action by a final policymaker. Thus, the District Judge should dismiss Scott's claims against Dallas County.

### III.    Scott fails to state a claim against D'Amore or Uher.

Scott's pleadings identify Thomas D'Amore and Danielle Uher as Defendants, but he does not explain how either individual violated his rights or could be liable to him. Scott's pleadings do not include specific allegations against D'Amore or Uher. To the extent Scott intends to sue D'Amore or Uher under 42 U.S.C. § 1983, such a claim may be brought only against a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Scott does not allege that D'Amore and Uher are state actors. Thus, the District Judge should dismiss Scott's claims against D'Amore and Uher.

### IV.    Scott otherwise fails to state a claim for relief.

#### A. Due Process

Scott states that Defendants kept him confined past his release date despite court orders requiring that he be released. Sec. Am. Compl. at 1–2.

Custodial officials have a duty to release their inmates in a timely manner. *Porter v. Epps,* 659 F.3d 440, 445 (5th Cir.2011). Holding a prisoner beyond his release date "constitutes a deprivation of due process." *Id.* (citing *Douthit v. Jones,* 619 F.2d 527, 532 (5th Cir.1980)). Prison officials can be held liable if they maintain a record keeping system in which time calculation errors are likely. *Id.* (citing *Bryan v. Jones,* 530 F.2d 1210, 1215 (5th Cir.1976)). But prison custodians are entitled to qualified immunity and will only be held liable if their conduct is objectively unreasonable and it is shown that they have been deliberately indifferent to the inmate's right to be released. *Id.* Inadvertent clerical oversights and errors beyond the official's control are not actionable violations. *Id.*

Scott provides no support for his conclusory allegation that prison officials kept him confined past his release date—or the identities of prison officials responsible for such a decision. The District Judge should dismiss Scott's due process claims. *See Gibson v. Thaler,* 2011 WL 867055, at *1 (S.D. Tex. Mar. 10, 2011) (noting that a court had previously dismissed claim that prison officials kept the plaintiff incarcerated past his release date where the claim was "factually baseless"); *see id.* (dismissing claim that prisoner was confined beyond his release date where the plaintiff "failed to identify a defendant who has any direct connection to his confinement").

### B. Eighth Amendment

Scott also alleges that Defendants caused him harm by keeping him in solitary confinement. *See* Sec. Am. Compl. at 1–2. The Court construes Scott's allegations as asserting a claim under the Eighth Amendment for cruel and unusual punishment.

The Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be grounds for a constitutional claim." *Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008)*. And the Supreme Court has explained that, while placement in solitary confinement for an *indeterminate* amount of time may amount to cruel and unusual punishment, a determinate time in segregation—where the conditions are not materially different from those affecting other prisoners—are within the authority of the prison administrator and not cruel or unusual. *See Hutto v. Finney, 437 U.S. 678, 686 (1978)*.

Cases in which segregated confinement is atypical enough to implicate a due process liberty interest involve circumstances much harsher than those presented here. In *Wilkerson v. Stalder*, the Fifth Circuit held that due process *might* have been violated when the plaintiff had been kept on lockdown status for thirty years. *Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003)* (remanding for determination whether such confinement was "atypical" under *Sandin v. Conner*, 515 U.S. 472, (1995)). Scott's assignment to solitary confinement for less

than a year is not the equivalent of the thirty years in administrative segregation like the plaintiff in *Wilkerson*.

Scott has not alleged that the conditions of his solitary confinement posed a significant or atypical hardship. Thus, Scott has failed to state a claim under the Eighth Amendment.

### C. ADA

The ADA prohibits discrimination against individuals with a qualifying disability. *Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010)*. To state a claim under the ADA, a plaintiff must show, among other things, that he is "disabled within the meaning of the ADA." *Kemp, 610 F.3d at 235* (citing *Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999)*). Under the ADA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)). The term "major life activities" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (citing 42 U.S.C. § 12102(2)(A)).

Scott generally alleges that he has a "disability." *See* Compl. at 4; Sec. Am. Compl. at 2. However, Scott fails to state what his disability is or otherwise explain how he is disabled. He also fails to provide any facts suggesting he is substantially limited in one or more major life activities. *See id.* (citing 42 U.S.C. § 12101(1)).

When asked to provide this information in response to the MJQ, Scott merely submitted a conclusory and nonsensical statement that failed to establish the elements for a claim under the ADA:

> Defendants KNEW of competency, and harm caused by solitary confinement Failed to prevent prosecutor from entering before Grand Jury that had taken an oath AS employees of the Court, voiding their indictment. A CLEAR ADA violation.

Resp. at 2. Scott has failed to state a claim under the ADA.

### D. RFRA and RLUIPA

Scott also states, without more, that Defendants violated his rights under RFRA and RLUIPA. *See* Sec. Am. Compl. at 2. But Scott has not stated a viable claim under either statute.

Initially, the Court observes that RFRA only applies to *federal* government actors. *See Opulent Life Church v. City of Holly Springs, 697* F.3d 279, 289 (5th Cir. 2012) (citing *City of Boerne v. Flores,* 521 U.S. 507, 532–36 (1997); *A. A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.,* 611 F.3d 248, 258–59 (5th Cir. 2010)). Scott does not plead any facts suggesting Defendants are federal actors. On this basis alone, the District Judge should dismiss Scott's RFRA claim. *See*, *e.g.*, *Witherspoon v. Waybourn,* 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021)* (granting defendant's motion to dismiss prisoner's RFRA claim because defendant was "not a federal actor and, therefore, RFRA [did] not apply"); *Guillory v. Jones Cnty. Jail,* 2014 WL 5847536, at *2 (S.D. Miss. Nov. 12, 2014)* (concluding prisoner failed to state a RFRA claim against sheriff, who was a state actor).

Construing Scott's claim as one under the Texas Religious Freedom Restoration Act (TRFRA) fares no better. TRFRA prohibits a governmental regulation from substantially burdening a person's religious free exercise unless the regulation "is in furtherance of a compelling governmental interest" and employs the least restrictive means of furthering that interest. Tex. Civ. Prac. & Rem. Code Ann. § 110.003(a)–(b). Similarly, "RLUIPA requires that prison officials refrain from (1) substantially burdening an inmate's free exercise of his religion unless, when strictly scrutinized, (2) the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling interest.' " *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009) (quoting 42 U.S.C. § 2000cc–1(a) (2006)).

Under TRFRA and RLUIPA, however, a plaintiff may not pursue a claim against a defendant in his individual capacity, nor may he successfully bring an official capacity claim against a defendant for money damages because such a claim is barred under the Eleventh Amendment. Tex. Civ. Prac. & Rem. Code § 110.005(d) ("A person may not bring an action for damages or declaratory or injunctive relief against an individual. . . ."); *Sossamon*, 560 F.3d at 331 (holding that "RLUIPA does not create a cause of action against defendants in their individual capacities" and any award of damages against defendants in their official capacities "is barred by Texas's sovereign immunity"); *see, e.g.*, *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (per curiam) ("An inmate is not entitled to monetary damages under RLUIPA for a suit brought against a

10

correctional officer in his individual capacity."); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) (per curiam) ("RLUIPA does not create a cause of action for damages against 'Texas and the defendants in their official capacities,' nor does it create a 'cause of action against defendants in their individual capacities.' ") (quoting *Sossamon*, 560 F.3d at 331 & n.51) (footnote omitted)); *Wagner v. Tex. Dep't of Crim. Just.*, 2018 WL 7133701, at *2 (N.D. Tex. Oct. 16, 2018) (recommending dismissal of prisoner's TRFRA claim against defendant in his official capacity for money damages because such claim is barred by the Eleventh Amendment); *McKennie v. Tex. Dep't of Crim. Just.*, 2011 WL 13237553, at *3 (W.D. Tex. May 24, 2011) (dismissing prisoner's TRFRA claim against defendant in official capacity where "the State of Texas [was] the real party in interest, and the Eleventh Amendment bar[red] the Court from exercising subject-matter jurisdiction over [prisoner's] TRFRA claims").

Here, Scott seeks $5 million in damages. *See* Sec. Am. Compl. at 2. He does so against named defendants—whom he does not allege are employed at any TDCJ facility—and "unknown others." *Id.* at 1. The Court interprets these "unknown others" to be officials employed at TDCJ facilities. Because Scott cannot pursue a TRFRA or RLUIPA claim against these Defendants for money damages in their individual or official capacities, the District Judge should dismiss such claims.

## V.   Scott fails to state a claim against unnamed Defendants residing in Oklahoma and California.

Scott suggests that he has been harmed by employees of the Oklahoma Department of Corrections—and potentially someone in Pelican Bay, California.

11

*See* Sec. Am. Compl. at 2. To the extent that Scott wishes to raise these claims in this proceeding, Scott has failed to explain how these individuals are connected to his incarceration in Texas or could be liable to him under any legal theory.

### Leave to Amend

"Rule 15 is a liberal standard that favors leave, but that preference has no purchase when amendment cannot cure the defect." *Ellsworth v. Dallas Tex. Dep't of Veteran Affs.*, --- F.4th ---, 2025 WL 3239806, at *5 (5th Cir. Nov. 20, 2025) (O'Connor); *see also Sanders v. Deluxe*, 2025 WL 3491013, at *3 (N.D. Tex. Nov. 14, 2025) (Rutherford, J.), *rec. adopted*, 2025 WL 3488340 (N.D. Tex. Dec. 4, 2025) ("Ordinarily, a *pro se* plaintiff should be granted the opportunity to amend her complaint prior to a dismissal."). Indeed, leave to amend is not required when plaintiff have already pleaded their "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009).

Scott has filed three complaints and responded to an MJQ. "A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a pro se litigant to amend his complaint." *Merchant v. Garland Police Dep't*, 2022 WL 1158262, at *7 (N.D. Tex. Mar. 28, 2022), *rec. accepted* 2022 WL 1158005 (N.D. Tex. Apr. 19, 2022) (citing *Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam)). Thus, Scott has had ample opportunity to plead his best case and further leave to amend is not necessary or warranted.

12

## Recommendation

The Court lacks jurisdiction over Scott's claims against the State of Texas, and the District Judge should dismiss those claims without prejudice. The District Judge should dismiss with prejudice the rest of Scott's claims under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

**SO RECOMMENDED.**

January 26, 2026

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

13